IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE L. FARMER, | ) | Case No. 1:17-cv-0860 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARMAINE BRACY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Petitioner, Bruce L. Farmer, seeks a writ of habeas corpus under 28 U.S.C. § 2254,

claiming that his conviction and sentence in *State v. Farmer*, Case No. CR-13-579424-A,

(Cuyahoga County, Ohio Court of Common Pleas), as affirmed in *State v. Farmer*, 2015-Ohio-

4676, 2015 Ohio App. LEXIS 4573 (Ohio Eighth Dist. App., November 12, 2015) violated his

constitutional rights.  ECF Doc. No. 1.  Respondent Warden, Charmaine Bracy[1], has filed a

return of writ.  ECF Doc. 15.  Farmer has filed a traverse.  ECF Doc. 19.

The matter is again before me by this Court's August 6, 2018 order of reference for

preparation of a report and recommendation on Farmer's petition.  Because each of Farmer's

claims has been procedurally defaulted or lacks merit, I recommend that the Court DISMISS all

of Farmer's grounds for relief and DENY his petition for writ of habeas corpus.

---

[1] Charmaine Bracy was the warden of Trumbull Correctional Institution, where Farmer is incarcerated, at the time Farmer filed his petition.  ECF Doc. 1 at Page ID# 1.  The current Trumbull Correctional Institution warden is Brandeshawn Harris.  https://www.drc.ohio.gov/tci (last visited January 31, 2019).

## II.     Procedural History

### A.     State Trial Court Conviction

A Cuyahoga County, Ohio grand jury issued a five-count indictment against Farmer on

October 29, 2013 charging him with: Count One – Aggravated Robbery, in violation of Ohio

Rev. Code. §2911.01(B)(1), a first-degree felony (Count One also had a three-year firearm

specification under Ohio Rev. Code § 2941.145(A) and a one-year firearm specification under

Ohio Rev. Code § 2941.141(A)); Count Two – Assault on a peace officer, in violation of Ohio

Rev. Code § 2903.13(A), a fourth-degree felony; Count Three – Breaking and Entering in

violation of Ohio Rev. Code § 2911.13(B), a fifth-degree felony; Count Four – Disrupting Public

Service, in violation of Ohio Rev. Code § 2909.04(A)(3), a fourth-degree felony; and Count Five

– Resisting Arrest, in violation of Ohio Rev. Code § 2921.33(B), a first-degree misdemeanor.

ECF Doc. 5-1, Ex. 1, Page ID# 55.  Farmer pleaded not guilty to the charges and proceeded to

jury trial commencing on November 17, 2014.  *Id*. at Page ID# 59.

On November 21, 2014 Farmer was found guilty of each of the counts; the trial judge

dismissed the firearm specifications after the State of Ohio withdrew them prior to the

commencement of trial.  *Id*. at Ex. 4, Page ID# 60.

The trial court conducted a sentencing hearing on December 29, 2014.  Farmer was

ordered to serve a prison term of eleven years on the Count One Aggravated Robbery charge,

eighteen months on the Count Two Assault on a Peace Officer charge, twelve months on the

Count Three Breaking and Entering charge, eighteen months on the Count Four Disrupting

Public Service charge, and six months on the Count Five Resisting Arrest Charge.  The prison

terms on Counts One, Two, Three and Four were ordered to be served consecutively; the prison

term on Count Five was to be served concurrently to the other counts.  In addition, the trial court

imposed a two-year consecutive prison term pursuant to Ohio Rev. Code § 2929.141 as a

sanction for Farmer's violation of the terms of pre-existing post-release control.   The aggregate

sentence was seventeen years.  The court notified Farmer of the imposition of post-release

control, made findings necessary for consecutive sentences, advised Farmer of his appeal rights

and appointed appellate counsel.  *Id*. at Ex. 5, Page ID# 61.

### B.    Direct Appeal

Farmer, represented by new counsel, filed a timely notice of appeal to the Ohio Court of

Appeals on January 28, 2015.  *Id.* at Ex. 6, Page ID# 63.  Farmer's appellate brief asserted four

assignments of error:

1.    It was error for the trial court to overrule Mr. Farmer's Crim.R.29 Motion for Judgment of Acquittal as to [Counts] 1, 4 and 5 made at the close of all the evidence as there was no evidence that the alleged victim of the acts charged in those counts was a "law enforcement officer" as alleged in the indictment and as the term is defined in the Revised Code.

2.    Mr. Farmer was denied his constitutional right to a fair trial and due process when he was found guilty on Counts 1, 4, and 5 when the counts was insufficient as it did not show that the alleged victim of the acts charged in those counts was a "law enforcement officer" as alleged in the indictment and as the term is defined in the Revised Code.

3.    The jury verdict finding Mr. Farmer guilty as charged in Count 2 of the indictment should be vacated because the evidence did not show that James Kirk was a peace officer as the term was defined for them.

4.    The trial court erred when it imposed an additional and consecutive two-year sentence for violation of post-release control in case no. 468217.

*Id.* at, Ex. 7, Page ID# 71-72.  The State filed a brief opposing Farmer's arguments.  *Id.* at Ex 8,

Page ID# 91.  In a November 12, 2015 journal entry and opinion, the Ohio Court of Appeals: (1)

vacated the jury's finding on the Count Two Assault charge that the victim was a peace officer,

vacated the trial court's sentence on that count and remanded the case for resentencing on Count

Two only; (2) vacated the sentence imposed for the post-release control violation, thereby

3

sustaining Farmer's fourth assignment of error; and (3) overruled Farmer's first and second assignments of error, thereby affirming his convictions on Counts One, Three and Four.  Farmer had not appealed from his conviction on Count Five.  The case was remanded for further proceedings.  ECF Doc. 5-1, Ex. 9, Page ID# 107, 116-117.

Farmer filed a timely notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court on December 23, 2015.  *Id*. at Exs. 10, 11, Page ID# 118, 120.  Farmer raised one proposition of law:

> 1. Because under the Rule of Lenity and the doctrine *expressio unius est exclusio alterius*, R.C. 2901.01(A)(11) provide the exclusive definition of "Law Enforcement Officer" for the offenses set forth in R.C. Chapter 29, a person not fitting any definition in that section is not a law enforcement officer and a conviction of an offense against such person as a law enforcement officer is based on insufficient evidence and must be vacated.

ECF Doc. 6-1, Ex. 8, Page ID# 101.  The State filed memorandum in opposition to jurisdiction. *Id*. at Ex. 12, Page ID# 131.  The Ohio Supreme Court declined jurisdiction on April 20, 2016. *Id*. at Ex. 13, Page ID# 142.  Farmer did not seek further review in the United States Supreme Court.  ECF Doc. 1, Page ID# 3.

### C.    Resentencing

Pursuant to the Ohio Court of Appeals mandate, Farmer returned to the trial court for resentencing on January 24, 2017.  The trial court imposed a six-month prison term on Count Two and ordered that it be served concurrently with the sentence previously imposed on the Count One Aggravated Robbery charge.  With the modification of the Count Two sentence and the vacation of the sentence on the post-release control violation, Farmer's aggregate sentence became 13 years and six months.  ECF Doc. 5-1, Ex. 14, Page ID# 143.  Farmer did not appeal the re-sentencing decision.

### D.    Petition to Vacate or Set Aside Judgment of Conviction or Sentence

While his direct appeal was pending, Farmer filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence on October 19, 2015.  *Id*. at Ex. 15, Page ID# 144. Farmer's petition raised a single claim: "[H]e "was denied due process when the State withheld or failed to provide video evidence from the body camera worn by the alleged victim."  The State filed a brief in opposition on November 17, 2015.  *Id*. at Ex. 16, Page ID# 158.  By a journal entry dated April 13, 2016 the trial court denied Farmer's petition.  *Id*. at Ex. 17, Page ID# 165. The trial court ruled that the arguments Farmer presented in his petition could have been raised on his direct appeal; and it concluded that the claims were barred by the doctrine of *res judicata*. *Id*.

Farmer filed a *pro se* notice of appeal on May 6, 2016[2] in regard to the trial court's April 13, 2016 journal entry.  The case was assigned court of appeals case number CA 16 104451.  *Id*. at Ex. 19, Page ID# 167.

Despite its April 13, 2016 journal entry, the trial court filed another journal entry on June 7, 2016 also denying Farmer's Motion to Vacate or Set Aside Judgment of Conviction or Sentence.  *Id*. at Ex. 18, Page ID# 166.  The June 7 journal entry – as with the April 13 entry – reflected the reasoning of the court, but it did so by expressing different grounds for denying the petition than had been expressed in the earlier entry.  Farmer did not file within the thirty-day deadline to appeal, a notice of appeal of the June 7 ruling.

Instead, Farmer appears to have tried to deal with this pair of orders by filing, *pro se*, a Motion for an Order for a Final Appealable Order on July 19, 2016.  *Id*. at Ex. 21, Page ID# 177. Farmer argued that under Ohio law two judgment entries for the same decision cannot constitute

---

[2] Farmer's notice of appeal certificate of service indicates he mailed the notice in April 2016, but he did not fill in the date of the month.

a final appealable order. The State filed a brief in opposition on July 22, 2016. *Id*. at Ex. 22, Page ID# 181. The State – making no mention of the April 13 journal entry from which Farmer had originally appealed – argued that the June 6 trial court entry was sufficient to constitute a final appealable order. The trial court denied the motion in an entry dated July 25, 2016, mirroring the State's argument and stating: "The court's 6/7/16 journal entry is sufficient to constitute a final appealable order." *Id*. at Ex. 23, Page ID# 185.

Although Farmer had filed a praecipe and a docketing statement with his notice of appeal from the April 13 ruling on his petition to vacate, he never filed an appellate brief, and the Ohio Court of Appeals dismissed Appeal No. 104451 *sua sponte* on August 1, 2016, "for failure to file a brief." App. R. 18(C). *Id*. at Ex 20, Page ID# 176.

On August 12, 2016 Farmer filed a notice of appeal from the trial court's June 7, 2016 order denying his petition to vacate or set aside judgment of conviction or sentence, citing the trial court's July 25, 2016 entry as having provided "affirmation" that the June 7 order was the final appealable order concerning the petition. Farmer claimed his appeal was timely-filed relative to the July 25 trial court order. The Ohio Court of Appeals assigned case number CA 16 104840 to Farmer's notice of appeal. *Id*. at Ex. 24, Page ID# 186. On September 6, 2016 the court of appeals dismissed Farmer's appeal number 104840 *sua sponte* for want of a final appealable order. *Id*. at Ex. 25, Page ID# 198.

Farmer filed a second motion for a final appealable order on October 7, 2016, reciting the same facts he asserted in his initial motion for a final appealable order but adding the fact of his most recent attempt to appeal and of the court of appeals' *sua sponte* dismissal thereof. *Id*. at Ex. 26, Page ID# 199. On October 17, 2016 the State filed a brief in opposition, again asserting, among other things, that the trial court's June 7, 2016 order denying Farmer's petition to vacate

6

was a final appealable order from which Farmer failed to appeal.[3]  ECF Doc. 5-1, Ex. 27, Page ID# 202.  On October 31, 2016 the trial court issued a journal entry denying Farmer's second motion for a final appealable order, stating: "The defendant received a final appealable order on 6/7/16 when this court denied his motion to vacate/set aside conviction.  He should have appealed from that order.  Unfortunately, the time to file that appeal has long since passed." ECF Doc. 5-1, Ex. 28, Page ID# 206.  As with the State's filings, the trial court's entry made no mention of its original, April 13, 2016 entry denying the petition to vacate or Farmer's appeal therefrom.[4]

### E.     Motion for Resentencing

On January 5, 2017, Farmer filed a *pro se* motion for resentencing for "the offenses for which he has been convicted in the instant case."  *Id*. at Ex. 36, Page ID#244.  Farmer contended the trial court improperly relied upon his juvenile criminal history when it determined to impose consecutive sentences in violation of the principles announced in *State v. Hand*, 2016-Ohio-5504.  He also argued his sentences were improperly determined based on the trial court's erroneous conclusion that he was on post-release control at the time he committed the offenses charged in this case.  As noted in Section IIC above, Famer was in the trial court on January 24, 2017 and resentenced pursuant to the court of appeals' mandate and remand.  By a journal entry filed on January 25, 2017 (the day after Farmer was resentenced), the trial court denied Farmer's motion for resentencing without discussion.  *Id*. at Ex. 37, Page ID# 248.

---

[3] This State filing again made no mention of the trial court's April 13, 2016 order and Farmer's appeal therefrom.  And the State never acknowledged, much less discussed, the confusion that would have arisen as a result of two journal entries – April 13 and June 7 – purporting to deny the same petition.

[4] Respondent essentially acknowledges the confusion evidenced by these filings by stating the following in her return of writ: "[W]hile Farmer had timely appealed the trial court's order denying his post-conviction petition, he failed to prosecute that appeal, resulting in the appellate court's sua sponte dismissal of the case.  Farmer failed to perfect any appeal of the trial court's second order denying his post-conviction petition."  ECF Doc. 15, Page ID# 327.

On August 11, 2017 Farmer filed a *pro se* motion in the trial court requesting that he be properly served with the January 25, 2017, order, contending he'd never been served properly. ECF Doc. 15-1, Ex. 38, Page ID# 354.[5]  The trial court granted the motion on August 17, 2017. *Id* at Ex. 39, Page ID# 361.  On September 19, 2017, Farmer filed a notice of appeal from the trial court's January 25, 2017, order dismissing his post-conviction motion for resentencing. EFC Doc. 15-1, Ex. 40, Page ID# 362.  The appeal was assigned case number CA 17 106280. The Ohio Court of Appeals dismissed appeal no. 106280, *sua sponte*, on September 27, 2017 "for failure to file a praecipe in accordance with Local App. R. 9(B)."  *Id*. at Ex. 41, Page ID# 367.  Farmer did not appeal that ruling to the Supreme Court of Ohio.

Instead, on October 13, 2017 – in an apparent attempt to overcome his failure to file a praecipe in connection with CA 17 106280 – Farmer filed a new notice of appeal (complete with praecipe and docketing statement) concerning the January 25, 2017 order denying his motion for resentencing.  The new appeal was assigned court of appeals case number CA 17 106370.  ECF Doc. 15-1, Ex. 42, Page ID# 368.  Also, in connection with his new appeal, on October 13, 2017 Farmer filed a motion for leave to file a delayed appeal, pursuant to Ohio Appellate Rule 5.  *Id*. at Ex. 43, Page ID# 382.  Six days later, on October 19, 2017 the Ohio Court of Appeals filed two journal entries, one denied Farmer's motion to file a delayed appeal and the other dismissed the appeal *sua sponte* in light of the delayed appeal denial.  *Id*. at Exs. 44, 45, Page ID# 385, 386.

On November 3, 2017 Farmer filed an application for reconsideration of the denial of delayed appeal and the dismissal of the appeal, purportedly pursuant to Ohio Appellate Rule 26. *Id*. at Ex. 46, Page ID# 387.  Four days later, on November 7, 2017 the Ohio Court Appeals issued a journal entry denying the motion for reconsideration.  *Id*. at Ex. 47, Page ID# 391.

---

[5] The court notes respondent has duplicated exhibit numbers in its two filings of state court record documents.

Farmer filed a notice of appeal to the Ohio Supreme Court on December 11, 2017 concerning the disposition of his most recent appeal (CA 17 106370). ECF Doc. 15-1, Ex. 48, Page ID# 392. Farmer's memorandum in support of jurisdiction asserted two propositions of law:

> **First Proposition of Law**: Is an appellant denied due process of law when he is denied an appeal for an inadvertent unneeded and inconsequential omission of a praecipe?
>
> **Second Proposition of Law**: Is an appellant denied due process of law under the Ohio and U.S. Constitutions when the trial court utilized illegal and improper information when formulating appellant's sentence per this court's ruling in *State v. Hand*, 149 Ohio St.3d 947?

ECF Doc. 15-1, Ex. 49, Page ID# 395. The State filed a waiver of its right to file a response memorandum on December 22, 2017. *Id*. at Ex. 50, Page ID# 406. The Ohio Supreme Court declined jurisdiction by a journal entry filed on April 25, 2018. Farmer did not seek further review in the United States Supreme Court.

### F.     Motion to Vacate a Void Judgment

Earlier, on April 10, 2017 Farmer – ostensibly unaware of the trial court's January 25, 2017 ruling on his motion for resentencing – filed a post-conviction motion to vacate the original judgment of conviction and sentence based on his contention that the trial court impermissibly used his juvenile record to enhance his sentence, in violation of the Ohio Supreme Court decision in *State v. Hand*, 2016-Ohio-5504 (essentially the same argument made in his motion for resentencing). ECF Doc. 5-1, Ex. 29, Page ID# 207. The State filed a brief in opposition on April 18, 2017 arguing that Farmer's interpretation of *State v. Hand* lacked merit and that *res judicata* principles prevented Farmer from relitigating the same issue decided in the disposition of his motion for resentencing. *Id*. at Ex. 30, Page ID# 215. The trial court denied the motion to vacate by a journal entry filed April 24, 2017. *Id*. at Ex. 31, Page ID# 219.

9

On May 18, 2017 Farmer filed a notice of appeal concerning the April 24, 2017 order denying his motion to vacate, and it was assigned court of appeals case number CA 17 105797. *Id*. at Ex. 32, Page ID# 220.  Farmer's appellate brief raised a single assignment of error: "The trial court erred to Appellant's prejudice when he denied his postconviction relief predicated on the violation of recently made applicable to Ohio defendants in *State v. Hand*, 2016-Ohio-5504." ECF Doc. 5-1, Ex. 33, Page ID# 229.  The State moved to dismiss the appeal in a filing dated July 20, 2017, arguing that Farmer's failure to perfect a timely appeal of the trial court's January 25, 2017 denial of Farmer's motion for resentencing – an order from which Farmer did not appeal – barred the appeal under *res judicata* principles.  *Id*. at Ex. 34, Page ID# 237.  On July 25, 2017 the Ohio Court of Appeals granted the State's motion to dismiss appeal no. CA 17 105795, adopting the State's *res judicata* argument.  *Id*. at Ex. 35, Page ID# 243.  Farmer did not appeal this decision to the Supreme Court of Ohio.

### G.     Federal Habeas Corpus Petition

Farmer filed his *pro se* petition for writ of habeas corpus in this court on April 21, 2017. ECF Doc. 1.  Normally, applying the prison mailbox rule,[6] the petition would be deemed to have been filed on the date Farmer placed it in the prison mail system.  However, Farmer did not list the date on which he mailed the document.  *Id*. at Page ID# 9.  Farmer now raises three grounds for relief:

> **GROUND ONE:** Petitioner was convicted for offenses committed against a law enforcement officer without sufficient evidence to support said convictions as the alleged victim's employment did not render him a law enforcement officer.

> **GROUND TWO:** Petitioner was denied due process of the law under the Fourteenth Amendment to the U.S. Constitution when the State withheld or failed to provide video evidence from the body camera worn by alleged victim or provide proper evaluation thereof when said evidence was critical to his defense.

---

[6] *Houston v. Lack*, 487 U.S. 266, 270 (1988).

> **GROUND THREE:** Petitioner's sentence was void due to constitutional violations as applied to the State of Ohio through the Ohio Supreme Court's decision in *State v. Hand*, 2016-Ohio-5504; 2016 Ohio LEXIS 2106, where the use of Petitioner's juvenile record was used to extend his sentence beyond statutory minimums and to run his sentences consecutively.

ECF Doc. 1, Page ID# 4, 5, 7.  Because Farmer still had state court proceedings ongoing at the time he filed his habeas petition, respondent moved to dismiss the petition on September 26, 2017 because it contained both exhausted and unexhausted claims for relief.  ECF Doc. 5.  Farmer moved to have the matter stayed and held in abeyance so that he could complete his state court litigation.  ECF Doc. 6.  Farmer filed a second motion for stay and abeyance on January 16, 2018.  ECF Doc. 8.  On February 16, 2018, the undersigned filed a report and recommendation that respondent's motion be denied, and that Farmer be granted a limited amount of time in which to file an amended petition that would omit his unexhausted Ground Three claim.  ECF Doc. 9.  On August 6, 2018 the Court issued a memorandum of opinion and order overruling all pending motions and referring the petition back to the undersigned for a report and recommendation on all grounds for relief.  ECF Doc. 12.

Respondent filed a return of writ and a supplement to the state court record on October 5, 2018.  ECF Doc. 15. Farmer filed his traverse on December 10, 2018.  ECF Doc. 19.  The matter is ripe for disposition.

## III.    The Facts

The analysis of Farmer's petition begins with the facts recited in the Ohio Court of Appeals opinion:

> {¶ 3}   The offenses arose from an incident that occurred on October 21, 2013. James Kirk, an officer with the Norfolk Southern Railroad Police Department, testified that he was patrolling in his unmarked police vehicle along a stretch of railroad track in Cleveland when he saw three individuals, one of whom was appellant, trespassing.  He activated his lights, stopped the individuals, and

informed them they were trespassing.  Officer Kirk was wearing a police uniform, including his badge, and was carrying mace and a firearm.

{¶ 4}   When Officer Kirk questioned appellant as to the spelling of the name he provided, appellant became nervous, turned, and ran.  Officer Kirk chased appellant, caught him, handcuffed him, and brought him back to the police vehicle.

{¶ 5}   According to the testimony of Officer Kirk, as he attempted to use his cell phone to call for assistance, appellant pulled one of his hands loose from the handcuffs and swung at the officer.  Officer Kirk was able to handcuff appellant again, but the struggle continued.  During the struggle, appellant hit the officer, attempted to grab the officer's gun, sprayed the officer with mace, and broke the officer's cell phone during the officer's attempt to call for backup.

{¶ 6}   Officer Kirk began yelling for someone to call 911.  A neighbor from the area made the call.  The neighbor testified that she saw the officer trying to hold the suspect on the ground and that the suspect kept fighting.  She stated the officer was asking for help and asking the suspect to stop.  Other bystanders arrived at the scene, and the two individuals who were with appellant on the tracks also returned.  One of those individuals took an aggressive stance toward the officer, at which point the bystanders intervened.  Eventually, the Cleveland police arrived.

{¶ 7}   Officer Kirk testified that he is "a certified police officer under the State of Ohio, and * * * commissioned through the State of Ohio with the Norfolk Southern Railroad Police Department."  He further testified to his training, qualifications, and duties as a law enforcement officer.

{¶ 8}   Appellant testified that after being stopped by the officer for walking on the tracks, he ran and was caught.  According to appellant, after he was taken back to the police vehicle, the officer pushed appellant to the ground, pinned appellant in a choke hold, and maced appellant and himself.  Appellant denied reaching for the officer's weapon.  Appellant's former girlfriend, who was one of the individuals with him on the tracks, testified that she observed the officer place appellant in a choke hold and that when the officer went to spray appellant with mace, he essentially sprayed himself.

{¶ 9}   During trial, the trial court denied appellant's *Crim. R. 29* motion for acquittal.  The jury returned a verdict of guilty on all counts.  The trial court imposed maximum consecutive sentences for the first four counts and a concurrent six-month sentence for resisting arrest, for a total prison term of 15 years.  The court also revoked postrelease control imposed in Cuyahoga C.P. No. CR-468217 and sentenced appellant to an additional and consecutive two years for the violation.

12

*State v. Farmer* 2015-Ohio-4676, 2015 Ohio App. LEXIS 4573 (Ohio Eighth Dist. App.,

November 10, 2015).  In a habeas corpus proceeding, factual determinations made by state courts

are presumed correct unless the petitioner rebuts them by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); see also *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012);

*Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).

## IV.    Legal Standards

### A.    AEDPA

A state habeas prisoner's claims for habeas corpus relief are governed by the Antiterrorism

and Effective Death Penalty Act, *Pub. L. 104-132, 110 Stat. 1214* ("AEDPA"), which amended

the habeas corpus statute by including a standard of review that gives significant deference to the

decisions made by the state courts on the constitutional issues raised in a habeas corpus petition.[7]

*See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v.

Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for

evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.

Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt,"

*Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279,(2002) (per curiam).

When the claim presented in a habeas corpus petition ***has*** been presented to and decided

on the merits by the state courts, a federal habeas court may not grant relief unless the state court's

decision was contrary to or an unreasonable application of clearly established federal law or based

---

[7] Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2254.  A review of Farmer's state court record reveals his petition was timely filed.  Because Respondent raises no timeliness issue, I find it unnecessary to set forth a statute of limitations analysis in this report.

13

on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C.

§ 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether

the state court's application of clearly established federal law is objectively unreasonable . . . an

unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a

petitioner must show the state court's decision was "so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011),

quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This

bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the

state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.

50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a]

state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.*, quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).  "The

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

**B.      Exhaustion and Procedural Default**

When a habeas petitioner presents a ground for relief that ***has not*** been presented to and decided on the merits by the highest state court that could pass upon such a claim, the federal court must make a close examination of the record to find out why the review did not occur.  In almost every circumstance, federal courts may neither review such claims on the merits nor grant habeas relief in regard to such claims.

AEDPA provides a way for state prisoners who are being held in custody in violation of the constitution or laws or treaties of the United States to apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with *federal* constitutional claims must present those claims to the state courts for consideration before becoming eligible for habeas corpus relief.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)).  But when a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . .." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

The term "procedural default" has come to describe the situation in which a person convicted of a crime in a state court fails (for whatever reason) to present a particular federal claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.  This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'"  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[8]

If the claims are not presented to the state courts in the manner state law requires, and the state courts therefore have not decided the federal claims on their merits, neither may a federal court do so.  In the words used by the United States Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

---

[8] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default has occurred, it is barred from considering the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).

### C.      Merits Review – Sufficiency of Evidence

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979).  A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to a petitioner's evidence sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).  The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis.  First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010).  The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

## V.      Discussion

### A.      Summary of Farmer's Claims

Farmer's Ground One claim for relief – questioning whether the railroad policeman

James Kirk met the definition of a "law enforcement officer" under Ohio law – ***was*** raised in

state court and reviewed on the merits.  Respondent concedes as much.  ECF Doc. 15, Page ID#

339.  Thus, this court may review the claim on the merits in order to determine whether Farmer's

federal constitutional rights have been violated.

Farmer's Ground Two claim for relief – predicated on his contention that the State

violated the rule of *Brady v. Maryland* by withholding James Kirk's body camera video evidence

– ***was not*** reviewed on the merits by the Ohio Court of Appeals, although Farmer was aware of

and made arguments concerning that issue during his trial.  Respondent argues this claim may

not be reviewed in a federal habeas case because it was procedurally defaulted.

Farmer's Ground Three claim for relief – predicated on his contention that the trial court

violated his due process rights by considering his history of juvenile criminal adjudications – ***was***

***not*** reviewed on the merits by the Ohio Court of Appeals, although Farmer raised the issue in the

trial court and the trial court ruled on Farmer's motion.  Respondent contends this ground too

was procedurally defaulted.

### B.      Merits Evaluation of Ground One

The essence of Farmer's Ground One claim is that a Norfolk & Southern Officer Kirk

was not a law enforcement officer as defined by Ohio law.  Farmer asserts that if Kirk was not a

law enforcement officer, then the State failed to produce sufficient evidence to prove Counts

One, Four and Five of the indictment, each of which included the term "law enforcement officer"

as an element of the offense.  As such, Farmer's claim is more a challenge to how the Ohio

Courts interpreted Ohio law than it is to the sufficiency of the evidence admitted at trial.

The starting point of the court's analysis is the state court of appeals decision.  Under

AEDPA, it is that decision which must be analyzed to determine whether it was contrary to, or

an unreasonable application of, clearly established federal law.  For the following reasons, the

court cannot make that conclusion.

The Ohio Court of Appeals determined, as a matter of Ohio law, that railroad police

officer James Kirk, under the evidence presented, met the definition of a law enforcement officer

as defined in the Ohio Revised Code:

> {¶ 13}  R.C. 2901.01(A)(11) defines a "law enforcement officer" in relevant part as
> follows:
>
>> (b) An officer, agent, or employee of the state or any of its agencies,
>> instrumentalities, or political subdivisions, upon whom, by statute, a duty to
>> conserve the peace or to enforce all or certain laws is imposed and the authority
>> to arrest violators is conferred, within the limits of that statutory duty and
>> authority.
>
> The testimony in this case established that Officer Kirk is "a certified police officer
> under the State of Ohio, and * * * commissioned through the State of Ohio with the
> Norfolk Southern Railroad Police Department."  Pursuant to R.C. 4973.17(B),
> railroad police officers may be commissioned by the secretary of state "to act as
> police officers for and on the premise of the railroad company, its affiliates or
> subsidiaries, or elsewhere, when directly in the discharge of their duties." These
> officers must successfully complete a training program approved by the Ohio peace
> officer training commission and be certified by the commission.  Railroad police
> officers commissioned under R.C. 4973.17(B) "shall severally possess and exercise
> the powers of, and be subject to the liabilities of, municipal policemen while
> discharging the duties for which they are appointed."  R.C. 4973.18.  Additionally,
> these officers have a statutory duty to "enforce and compel obedience" of lawful
> regulations promulgated by their employer.  R.C. 4973.19.
>
> {¶ 14}  When determining whether officers commissioned under prior versions of the
> R.C. 4973.17 are law enforcement officers, the Ohio Supreme Court has found that
> "duly commissioned law enforcement officers who are hired and directed in their
> specific duties by a private [entity] are public officers deriving their authority from

the sovereign[.]" *Ayers v. Woodard*, 166 Ohio St. 138, 143, 140 N.E.2d 401 (1957).
Their acts are presumed to have been performed in their official capacity absent
evidence to the contrary. *Id*.; see also *New York, C. & St. L. R. Co. v. Fieback*, 87
Ohio St. 254, 265, 266, 100 N.E. 889, 10 Ohio L. Rep. 536 (1912) (recognizing a
duly commissioned railroad police officer is presumed to act in conformity with his
official duties).

{¶ 15}  In *State v. Hughes*, 1st Dist. Hamilton No. C-070755, 2008-Ohio-3966,
syllabus, the court found that "[a] police officer working for a conglomerate of
hospitals on hospital grounds was a state actor when he was commissioned under
R.C. 4973.17 and endowed with plenary police powers, including the power to
arrest."  The court also found that the officer was acting as a "de facto police officer"
when he arrested the defendant for criminal trespassing. *Id*. at ¶ 19.

{¶ 16}  In *State v. Bryant*, 9th Dist. Summit No. 17618, 1996 Ohio App. LEXIS 5819
(Dec. 26, 1996), the court found that a bank fraud investigator commissioned under
R.C. 4973.17 was a "law enforcement officer" within the meaning of Crim. R. 41.
The court recognized that "R.C. 4973.18 confers all the powers of a municipal police
officer upon [the investigator] so long as these powers are exercised while she is
discharging her duties as a bank fraud investigator." *Id.*

{¶ 17}  Similar to the officers in *Hughes* and *Bryant*, Officer Kirk is a commissioned
police officer pursuant to R.C. 4973.17 and was acting in his official capacity when
he apprehended appellant in this  case.  We hold that he is a law enforcement officer
within the meaning of R.C. 2901.01(A)(11).

{¶ 18}  After viewing the evidence in a light most favorable to the prosecution, we
find any rational trier of fact could have found the essential elements of the crime
proven beyond a reasonable doubt.  Appellant's first and second assignments of error
are overruled.

*State v. Farmer* 2015-Ohio-4676, 2015 Ohio App. LEXIS 4573 (Ohio Eighth Dist. App.,

November 10, 2015).

It is important to stress at the outset, that this court lacks the power to reach its own

conclusion about what the term "law enforcement officer" means under Ohio law.  In other

words, this court is bound by Ohio's interpretation of its own statutes, and there is generally no

federal constitutional issue posed by such interpretations, even if they are interpretations that this

court or other courts might decide differently.  *See Warner v. Zent*, 997 F.3d 116, 133 (6th Cir.

21

1993) ("On habeas review, we are bound by state court interpretations of state criminal law except in extreme circumstances where it appears that the interpretation is an obvious subterfuge to evade consideration of a federal issue.")  Further, "[a] state is free within extremely broad limits to decide upon the elements of a crime."  *Eaglin v. Welborn*, 57 F.3d 496, 500 (7th Cir. 1995).  And it should be noted that although Farmer presents a sufficiency of the evidence argument based on the contention that James Kirk was not a law enforcement officer as defined by Ohio law, he does not argue that Ohio was prevented by the federal constitution from defining "law enforcement officer" to include people like James Kirk who worked as a police officer for a railroad.

Unfortunately for Farmer, the posture of this case precludes any federal habeas corpus relief on his first ground for relief.  As the Ohio Court of Appeals defined "law enforcement officer" – that is, a commissioned police officer pursuant to Ohio Rev. Code § 4973.17 who was acting in his official capacity – there was enough evidence to show that Kirk met that definition.  Even if there were not, for this court to grant relief, we would have to find that the state appellate court unreasonably determined that the evidence was sufficient to meet its definition of a law enforcement officer.  However, under AEDPA and other applicable law, the deference due to state courts on this issue is essentially two levels of deference, one for the jury's decision and the second for the appellate court's decision.  *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Given that deference, we are required to conclude that both a reasonable jury and a reasonable state court could have found that the evidence presented – more fully described in the recital of facts from the state appeals court's decision – was sufficient; that is, as that court said, "we find any rational trier of fact could have found the essential elements of the crime proven

beyond a reasonable doubt." *State v. Farmer* 2015-Ohio-4676, 2015 Ohio App. LEXIS 4573, * 18.

The Ohio Court of Appeals applied the evidence-sufficiency standard of *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991)*,* which is the Ohio analogue to *Jackson v. Virginia*. Thus, the correct legal standard was identified and applied.  The Ohio Court of Appeals determined, as a matter of law, that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes charged in Counts One, Four and Five were proven beyond a reasonable doubt.  It is both to this conclusion and the Ohio Court of Appeals conclusion on the definition of law enforcement officer under Ohio law to which AEDPA deference must be applied.  Consequently, Ground One lacks merit.  Farmer has not shown that the court of appeals definition of the term law enforcement officer was adopted as a subterfuge to avoid federal court review.

Because Farmer's Ground One claim lacks merit, I recommend that the court DISMISS the claim.

## C.       **Ground Two – Procedural Default**

Farmer's Ground Two claim alleges that the state court trial prosecutor withheld evidence consisting of body camera video recordings made by railroad police officer James Kirk, in violation the rule established in *Brady v. Maryland*.[9]  Warden Bracy argues this claim was procedurally defaulted because Farmer did not raise it on direct appeal despite his awareness of the issue at the time of the direct appeal.  The warden contends the Ohio courts enforced the rule of *res judicata*, which precludes later review of an issue that could have been raised in an earlier proceeding.

---

[9] The testimony at trial was that no video recordings were retrievable due to damage to the recorder that occurred during the incident with Farmer.

Farmer raised the issue of the body camera video evidence at trial but then failed to pursue that matter through direct appeal to either the Ohio Court of Appeals or the Ohio Supreme Court.  Because Farmer failed to fairly present and obtain review of his *Brady* claim through Ohio's ordinary appeal process, he may not obtain review of the issue as a part of his habeas case unless he can show cause and prejudice.  Because he cannot, the claim has been procedurally defaulted.

As outlined above, before seeking habeas relief, a state prisoner must exhaust available state remedies by fairly presenting all claims to the state courts.  28 U.S.C. § 2254(b).  To "give the state courts one full opportunity to resolve any constitutional issues" state prisoners must invoke "one complete round of the State's established appellate review process." *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999)).  This generally means a prisoner must raise a constitutional claim on direct review, see *Id.*, and appeal any adverse decision to the "highest court in the state in which [he] was convicted." *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003).  The burden is on the petitioner to prove that he has exhausted these remedies. *Id.*  The failure to exhaust is considered a procedural default when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Farmer cannot meet his burden.  He did not raise his *Brady* claim on direct review.  Thus, he did not give the Ohio courts a full opportunity to redress his constitutional grievance.

Farmer *did* attempt to address his *Brady* claim in a petition to vacate or set aside his conviction of sentence, filed on October 19, 2015.  But that did not fulfill the requirement that he

24

present the claim in his direct appeal as a part of Ohio's ordinary review process.  The trial court reached the same conclusion in its April 13, 2016 order denying the petition on *res judicata* grounds because the *Brady* claim was not raised on direct appeal.  Farmer filed a notice of appeal concerning that decision on May 6, 2016.  But he never filed a brief in support of that appeal, causing the Ohio Court of Appeals to dismiss the appeal *sua sponte* on September 6, 2016 under Ohio Appellate Rule 18(C) for want of an appellate brief.[10]  Thus, between not raising the *Brady* claim in direct appeal and being refused the attempt to raise it via post-conviction proceedings, the record is quite clear that the Ohio Court of Appeals and the Supreme Court of Ohio were never given the opportunity to correct the alleged error arising from the "withholding" of the body camera evidence from railroad policeman James Kirk.

"[When] 'a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate [1] cause for the default and [2] actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' *Combs v. Coyle*, 205 F.3d 269, 274 (quoting *Coleman*, 501 U.S. at 750)."  *Freeman v. Moore*, 303 F. App'x 285, 289 (6th Cir. 2008).

Farmer has not asserted that something external to the defense prevented him from including his *Brady* claim in his direct appeal; and, even if his post-conviction petition was deemed to be a substitute for the direct appeal, Farmer has offered no explanation for why he

---

[10] Inexplicably, the trial court issued a second order – on June 7, 2016 – denying the post-conviction petition on the merits.  This triggered an avalanche of subsequent trial and appellate court filings in which Farmer sought a single final appealable order, was denied such by the trial court in a July 25, 2016 order (which stated that the June 7, 2016 order *was* a final appealable order).  Farmer appealed that ruling, but his appeal was dismissed *sua sponte for lack of a final appealable order*.  Undaunted, Farmer filed a second motion for a final appealable order on October 7, 2016 but the trial court denied that relief on October 31, 2016.  This saga is detailed on pages 5-7, *supra*.

failed to file an appellate brief in his appeal of the trial court's April 13, 2016 order denying his

petition. Thus, his failure to comply with the Ohio law of *res judicata* and his failure to comply

with Ohio's appellate rules provided independent and adequate state-law grounds upon which the

Ohio courts declined to review the *Brady* claim. Moreover, Farmer has not shown prejudice

from the failure to have that claim reviewed. He has not presented anything other than his

surmise that the video camera was actually functional (there was evidence to the contrary) or that

any recording of the events at issue would have proven to be exculpatory. Finally, this is not the

rare case in which the court should overlook the procedural default to prevent the manifest

injustice that would arise from knowing that someone who was actually innocent had been

convicted. Farmer has presented no new, reliable evidence to show that he was not guilty of the

crimes of which he was convicted.

Ground Two should be dismissed on the ground that it was procedurally defaulted.

### D. Ground Three – Procedural Default

Farmer's Ground Three claim for relief presents a due process challenge to the initial

sentence imposed by the trial court. In short, he asserts that the trial judge violated his

constitutional rights by taking his juvenile criminal history into consideration when determining

the sentence to impose in this case. He alleges that the manner in which sentence was imposed

violated the rule established by the Ohio Supreme Court in *State v. Hand*, 149 Ohio St.3d 94,

2016-Ohio-5504; 2016 Ohio LEXIS 2106, which adopted as Ohio law the principles announced

by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,

147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d

314 (2013). Respondent contends the issue Farmer raises involves only an evaluation of Ohio

sentencing law and presents no federal law question at all, thereby making it not cognizable in a

federal habeas case.  Respondent also contends Farmer procedurally defaulted the claim by not presenting this issue on direct appeal after he was resentenced on January 24, 2017[11]. Respondent is correct in part.  Farmer failed to perfect a proper direct review appeal on this issue after the trial court denied his motion for resentencing and offers no argument that his default was caused by something he could not control or that he has suffered prejudice.

After the Ohio Court of Appeals remanded Farmer's original appeal so that he could be resentenced, Farmer filed a "motion for resentencing" on January 5, 2017.  ECF Doc. 5-1, Ex. 36, Page ID# 244.  The motion asserted for the first time the same claim presented in Farmer's Ground Three claim.  In essence, he asserted that the 2016 rule announced in *State v. Hand* provided a new ground for relief from the trial court's determination to impose consecutive sentences at the time it originally sentenced Farmer on December 29, 2014.

Initially, I note this claim could have been but was not presented on direct appeal. Although *State v. Hand* was decided in 2016 – arguably explaining why Farmer didn't raise this issue until after *Hand* was decided – the federal constitutional law upon which it was founded (the U. S. Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013)) were established precedent by the time of Farmer's 2015 direct appeal.  Respondent does not argue procedural default on this basis, however.  Instead, the warden argues that Farmer never obtained review of the merits of his Ground Three claim in the Ohio Court of Appeals or Ohio Supreme Court after the trial court denied the motion for resentencing.

As with other parts of Farmer's state court history, the multiplicity of filings makes it difficult to keep clear what was being appealed when.  Although the details of the case history

---

[11] The journal entry of the sentencing was filed on January 25, 2017.  ECF Doc. 5-1

are cited above, the following bullet points will sharpen the focus on the issue raised in Ground

Three:

- On November 12, 2015 Farmer's direct review appellate decision is issued by the Ohio Court of Appeals.  The case was remanded for resentencing on the Count Two assault charge "only."  ECF Doc. 5-1, Ex. 9, Page ID# 116.

- On August 25, 2016 the Ohio Supreme Court decided *State v. Hand*.

- On January 5, 2017 Farmer filed his motion for resentencing in the trial court, arguing his due process rights were violated when the trial court in its original sentence considered his juvenile record, in violation of *Hand*.  ECF Doc. 5-1, Ex. 37, Page ID# 244.

- On January 24, 2017 the trial court imposed a new sentence on the Count Two assault charge (only) pursuant to the remand order by the court of appeals.  The journal entry was filed on January 25, 2017.  ECF Doc. 5-1, Ex. 14, Page ID# 143.

- On January 25, 2017, the trial court issued a journal entry denying Farmer's motion for resentencing.  ECF Doc. 5-1, Ex. 37, Page ID# 248.

- On August 11, 2017, Farmer, asserting he'd never been properly served with the January 25 entry denying the motion for resentencing, moved for proper notice of the entry.  The trial court granted the motion on August 17, 2017.  ECF Doc. 15-1, Exs. 38, 39, Page ID# 354, 361.

- On September 19, 2019 Farmer filed a notice of appeal (COA No. 106280) from the January 25, 2017 order denying his motion for resentencing.  ECF Doc. 15-1, Ex. 40, Page ID# 362.

- **On September 27, 2017 COA 106280 was dismissed *sua sponte* because Farmer failed to file a praecipe in accordance with Local App. R. 9(B).  ECF Doc. 15-1, Ex. 41, Page ID# 367**.

- On October 13, 2017 Farmer filed a new notice of appeal concerning the January 25, 2017 order denying his resentencing motion (COA No. 106370).  ECF Doc. 15-1, Ex. 42, Page ID# 368.

- On October 13, 2017 Farmer also filed a motion for leave to file delayed appeal with respect to the notice of appeal filed on the same date (COA No. 106370).  ECF Doc. 15-1, Ex. 43, Page ID# 382.

- On October 19, 2017, the Ohio Court of Appeals issued two journal entries: (i) denying Farmer's motion for leave to file delayed appeal, and (ii) dismissing

COA No. 106370 pursuant to the denial of the delayed appeal request.  ECF Doc. 15-1, Exs. 43, 44, Page ID# 385, 386.

- On November 3, 2017 Farmer filed a motion for reconsideration of the denial of his motion for leave to file a delayed appeal.  ECF Doc. 15-1, Ex. 46, Page ID# 387

- On November 7, 2017 the Ohio Court of Appeals denied Farmer's motion for reconsideration.  ECF Doc. 15-1, Ex.

- On December 11, 2017 Farmer sought Ohio Supreme Court review of the October 19 and November 3 court of appeals orders.  The Supreme Court declined review on April 25, 2018.  ECF Doc. 15-1, Exs. 48, 51, Page ID# 392, 407.

This record of events shows that Farmer never obtained Ohio Court of Appeals or Ohio Supreme Court review of his Ground Three due process claim.  Moreover, it is also apparent that Farmer never pursued an appeal of the trial court's January 25, resentencing order.[12]  Only the activities relating to Farmer's effort to obtain review of the order denying his motion for resentencing – the motion which asserted the same argument he now asserts in Ground Three – are pertinent.

This set of circumstances requires this court to apply the Sixth Circuit test of *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), to determine whether Farmer's Ground Three claim is barred by the failure to observe a state procedural rule.  First, we must determine whether there exists a state procedural rule with which the petitioner failed to comply.  Then the court must determine whether the state court enforced a sanction for failure to comply.  If so, it must then be decided whether failure to comply with the state procedural rule constitutes an adequate and

---

[12] Unlike respondent, I conclude the failure to appeal the January 2017 imposition of a new sentence on Count Two following remand from the state appellate court is not significant in the evaluation of Farmer's habeas petition. The only issue addressed by the trial court on that occasion was the imposition of a six-month sentence on Count Two once it was reduced from a felony assault on a peace officer charge to a simple misdemeanor assault charge.  Nothing in the trial court's resentencing entry indicates it re-evaluated or re-imposed sentences on the other charges of which Farmer had been convicted.  It is the imposition of consecutive sentences on *those* charges and the trial court's alleged consideration of Farmer's juvenile record about which he complains in Ground Three.

independent ground for barring federal review.  If all these questions are answered in the affirmative, default exists, and the petitioner must satisfy the "cause and prejudice" analysis set forth in *Wainwright v. Sykes*, 433 U.S. 72, 90-91, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), to excuse the default.

First, the Ohio Court of Appeals dismissed Farmer's appeal of the January 25, 2017 because Farmer failed to file a praecipe.  ECF Doc. 15-1, Ex. 41, Page ID# 367.  The dismissal of the appeal reflected the court's imposition of a sanction for Farmer's failure to comply with a procedural rule – Local Appellate Rule 9(B).  In doing so, albeit in a single sentence, the court expressed no reliance upon federal law.  "Failure to comply with written procedural rules detailing the timing and filing of appellate documents has been adjudged a bar to federal habeas review when the rules of appellate procedure are well-established and regularly followed, i.e. adequate and independent state procedural rules."  *Marshall v. Brunsman*, No. 1:09cv0259, 2010 U.S. Dist. LEXIS 140202, at *21-22; 2010 WL 5627660 (N.D. Ohio December 3, 2010, Pearson, MJ)[13], citing, *Shroyer v. Moore*, No. C-1-05-797, 2007 U.S. Dist. LEXIS 63811, 2007 WL 2492312 (S.D. Ohio Aug. 29, 2007)("In so ruling, the court clearly and expressly relied on both an independent and adequate State ground stemming from petitioner's noncompliance with the court's well established and regularly-followed written procedural rules governing the timing and filing of the requisite appeal documents.")

Because all of the first three parts of the *Maupin* test are answered in the affirmative, the burden falls upon Farmer to show cause and prejudice in order to overcome his procedural default.  He has not attempted to argue or show that some factor external to the defense caused his failure not to file a praecipe.  Thus, he cannot meet the cause requirement.  And he has not

---

[13] Accepted by, adopted by, Pet. for writ of habeas corpus dismissed by, *Marshall v. Brunsman*, 2011 U.S. Dist. LEXIS 5835 (N.D. Ohio Jan 21, 2011)

met the prejudice requirement.  As noted above, the main argument Farmer advances concerning

his convictions is not that he didn't have an incident with James Kirk, but that Kirk cannot be

considered a law enforcement officer.  There was ample evidence to support Farmer's

convictions and the trial court's sentence was not challenged on direct appeal (apart from the

issues on which Farmer prevailed).  Thus, he has not been prejudiced by the Ohio Court of

Appeals' failure to consider his Ground Three claim on the merits.

Finally, this is not the rare case in which the court should overlook the procedural default

to prevent the manifest injustice that would arise from knowing that someone who was actually

innocent had been convicted.  Farmer does not even argue that he is actually innocent in Ground

Three.  Rather, he argues that the trial court erred in sentencing him.

Farmer's Ground Three claim should be dismissed because it was procedurally defaulted.

The respondent also contends that Ground Three raises only a non-cognizable state law claim.

Given the finding that the claim has been procedurally defaulted, it is unnecessary to reach a

conclusion on its cognizability.[14]

## VI.  Recommendation Regarding Certificate of Appealability

### A.  Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C.

§ 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of

habeas corpus unless a judge issues a certificate of appealability.  The statute further provides

that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

---

[14] This issue is not as clear as respondent asserts.  Because Ground Three is predicated on *State v. Hand*, and because that case directly relied on the United States Supreme Court decisions in *Apprendi* and *Alleyne* cited above, an argument could be made that Farmer raised a federal constitutional issue by virtue of the state court's contended violation of the principles announced in those Supreme Court cases.

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

The resolution of the Farmer's s Ground One claim for relief on the ground that it lacks merit cannot reasonably be debated.  Likewise, the conclusion that Farmer procedurally

defaulted his Ground Two and Ground Three claims for relief cannot reasonably be debated.
Thus, I recommend that a certificate of appealability be denied.

## VII.    Recommendations

Because Farmer's Ground One claim lacks merit, I recommend that it be dismissed.
Because Farmer's Ground Two and Ground Three claims have been procedurally defaulted, I
recommend they be dismissed.  If the Court accepts these recommendations, I further
recommend that the Court deny Farmer's petition for writ of habeas corpus under 28 U.S.C. §
2254.  I further recommend that Farmer not be granted a certificate of appealability.

Dated: February 12, 2019

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after being served with a copy of this document.  Failure to file
objections within the specified time may waive the right to appeal the District Court's order.  See
*U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985),
reh'g denied, 474 U.S. 1111 (1986).